UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RICHARD C. RODOLF, | ) | CASE NO. C08-0475-RSL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CHRISTOPHER KIELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Richard C. Rodolf, proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 civil rights complaint for an alleged violation of his civil rights that occurred during his arrest. Just past midnight on March 25, 2005, he led Deputies Christopher Kieland and Dragic Micic and Sergeant Richard Connelly of the King County Sheriff's Office on a high-speed chase that came to an abrupt halt only after Mr. Rodolf ploughed his car into a parked minivan. Mr. Rodolf alleges that defendants used excessive force because he was not resisting arrest when Deputy Micic and Sergeant Connelly restrained him while Deputy Kieland struck him repeatedly in the face. Having considered the parties' briefs and the balance of the record, the Court recommends that defendants' motion for summary judgment (Dkt. 37-3) be GRANTED as to

REPORT AND RECOMMENDATION
PAGE -1

Deputies David Mann and Gregory Martinez and DENIED as to defendants Kieland, Micic, and Connelly.

## BACKGROUND

There is no factual dispute about the high-speed chase that led to Mr. Rodolf's arrest. Deputy Kieland was driving in a marked patrol car in Shoreline, Washington when he saw a silver sports car speed in the opposite direction. (Dkt. 39 ¶ 2 (hereinafter "Kieland Decl.").) The car bottomed out when it hit a dip in the road, causing sparks to fly from under the vehicle, and the hatchback was unsecured and bouncing up and down. (*Id.*) After the car ran a red light, Deputy Kieland made a U-turn and attempted to catch up with the car, which was going approximately 55 mph on a 25 mph residential street. (*Id.* ¶ 3.) Deputy Kieland advised his dispatcher that he was following a reckless driver and a high-speed chase ensued that was eventually joined by Deputy Micic and Sergeant Connolly's marked patrol car. (*Id.* ¶ 4; Dkt. 38 ¶¶ 2-3 (hereinafter "Connolly Decl.").) Sirens blaring and emergency lights flashing, the patrol cars chased the silver car, which reached speeds of up to 60 mph, through red lights and stop signs for approximately two minutes. (Kieland Decl. ¶ 5; Connolly Decl. ¶ 3.)

The silver car failed to negotiate a turn and crashed head-on into a parked minivan. (Kieland Decl. ¶ 4; Connolly Decl. ¶ 3.) Deputy Kieland walked toward the silver car with his gun drawn. (Kieland Decl. ¶ 6.) Sergeant Connolly and Deputy Micic arrived shortly thereafter and they too drew their guns and walked toward the silver car. (*Id.*; Connolly Decl. ¶ 4.) Deputy Kieland and Sergeant Connolly yelled repeatedly at the driver to get out of the car and put his hands up, but the driver did not comply. (Kieland Decl. ¶ 6; Connolly Decl. ¶ 5.) They approached the driver's side of the car and the driver was trying to start the engine. (Kieland

Decl. ¶ 6; Connolly Decl. ¶ 4.) After the driver ignored more commands to show his hands and get out of the car, Deputy Kieland used his flashlight to break the driver's-side window so that he could gain control of the driver. (Kieland Decl. ¶ 6; *id.*, Ex. C at 16.) The driver then put the car in reverse and the tires began spinning on gravel. (Kieland Decl. ¶ 6.) Deputy Kieland and Sergeant Connolly reached inside the car and grabbed hold of the driver. (Connelly Decl. ¶ 4.) The car moved backward about four feet then lurched forward and stalled. (Kieland Decl. ¶ 6*id.*, Ex. C at 16; Connelly Decl. ¶ 4.) At that time, Deputy Kieland recognized the driver as Mr. Rodolf. (Kieland Decl. ¶ 6.) Deputy Kieland had arrested him a week earlier for driving without a license and also about two months earlier for possession with intent to sell cocaine and heroin. (*Id.*)

Defendants state that Mr. Rodolf would not respond to their commands, gripped the steering wheel with his left hand while keeping his right hand out of view, and stared blankly forward as if intoxicated or under the influence of drugs. (Dkt. 37-3, at 4; Kieland Decl. ¶ 7.) Deputy Kieland called out to the others to watch Mr. Rodolf's right hand for a weapon. (Kieland Decl. ¶ 8.) Deputy Kieland and Sergeant Connolly state that they feared that if they did not get Mr. Rodolf out of the car, he would drive away again. (Kieland Decl. ¶ 8; Connelly Decl. ¶ 6.) It is at this point—with defendants Kieland and Connolly attempting to pull Mr. Rodolf out of the vehicle—that the factual narratives diverge.

Defendants submit that Deputy Kieland punched Mr. Rodolf in the face with his left hand to gain control of him. (Kieland Decl. ¶ 8; Connelly Decl. ¶ 4.) According to defendants, this worked: immediately after Deputy Kieland struck Mr. Rodolf, defendants Kieland and Connolly were able to pull Mr. Rodolf from the car and put him chest down on the ground, where he

continued to struggle. (Kieland Decl. ¶ 8; Connelly Decl. ¶¶ 4-5; Dkt. 40 ¶ 3 (hereinafter "Mann Decl.").) Once Mr. Rodolf was on the ground, the officers used restraint holds to gain control of him and put handcuffs on his wrists. (Kieland Decl. ¶ 8; Connelly Decl. ¶ 5.)

Mr. Rodolf tells a different tale:

> Deputy Micic[] . . . restrained me immobile along with . . . Deputy . . . Richard J. Connelly #05102 who also restrained me immobile my hands out-stretched in a defenseless non-threatening posture.
>
> . . . Deputy[] Christopher Kieland # 08386 then [] struck me repeatedly in the face, . . . Deputy[] Micic . . . held me physically along with . . . Deputy[] Richard J. Connelly #05102, who also held me physically, which . . . Deputy[] Christopher Kieland #08386 struck me intentionally trying to cause me "severe" "serious", bodily harm . . . in violation of my Constitutional rights. I suffered injuries as a result and was hospitalized.

(Dkt. 15, at 12-13 (Corrected Amended Complaint).) Mr. Rodolf alleges that he "offered no resistance in being restrained" and "did not provoke the Defendants" because his "hands were outstretched all the while." (*Id.* at 15.) He emphasizes that he "was repeatedly struck in the face by defendant Officer . . . Kieland while restrained." (*Id.*)

A plethora of items related to drug sales was removed from Mr. Rodolf's pants and coat pockets: cocaine, sandwich bags, a digital scale, crack cocaine, heroin, and orange and red pills in an unlabeled prescription bottle. (Kieland Decl. ¶ 9.) Medical aid was called to the scene because Mr. Rodolf was bleeding from the head and Deputy Kieland's right hand was bleeding from a cut that Deputy Kieland says was the result of breaking the driver's-side window. (Kieland Decl. ¶ 10.) Mr. Rodolf was transported to a hospital for treatment and for a blood draw. (Dkt. 41 ¶ 4 (hereinafter "Martinez Decl.").) The blood test showed that Mr. Rodolf had cocaine and diazepam in his bloodstream at the time of the arrest. (Kieland Decl., Ex. B at 9.) Deputy Kieland

was also sent to the hospital for treatment for possible exposure to a blood-borne pathogen. (Kieland Decl. ¶ 10.) Mr. Rodolf later pleaded guilty to attempting to elude a pursuing police vehicle and to violating the Uniform Controlled Substance Act. (Kieland Decl., Ex. D at 20-24.) On March 20, 2008, Mr. Rodolf signed his proposed 42 U.S.C. § 1983 complaint, which was postmarked on March 21, 2008, and received by the Court on March 24, 2008, i.e., shortly before the presumptive three-year statute of limitations on his action ran out. (Dkt. 6, at 1, 8, 9.)

## DISCUSSION

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution or federal statutes. *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995). Mr. Rodolf contends that defendants used excessive force in violation of the Fourth Amendment because he was restrained and struck repeatedly in the face though he offered no resistance to being arrested. Defendants move for summary judgment on three grounds: (1) defendants did not use excessive force under the circumstances; (2) defendants are entitled to qualified immunity; and (3) the statute of limitations bars the suit against all defendants save Deputy Kieland because they were added as defendants only in the amended complaint.

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not the Court's function at the

summary judgment stage to determine credibility or to decide the truth of the matter. *Anderson*, 477 U.S. at 255. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

Mr. Rodolf has not alleged any facts whatsoever to implicate two of the defendants—Deputies David Mann and Gregory Martinez—in the use of excessive force. Neither Deputy Mann nor Deputy Martinez witnessed Mr. Rodolf being struck, having arrived later to the scene. (Mann Decl. at ¶¶ 3, 6-7; Martinez Decl. ¶¶ 2, 5.) Summary judgment is therefore properly granted in favor of Deputies Mann and Martinez. There is, however, a genuine issue of material fact about whether Mr. Rodolf was struck repeatedly in the face after the need to do so had passed. The Court therefore recommends denying the motion for summary judgment as to defendants Kieland, Micic, and Connolly. The Court recommends finding that this action against four defendants is not barred by the statute of limitations because the amended complaint relates back to the date the action was commenced.

**I.  Excessive Force**

The dispositive inquiry in a Fourth Amendment excessive force claim is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court balances the quantum of force used against the need to use that quantum

of force. *See Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). The Ninth Circuit has identified several factors to consider in assessing an officer's need to use a particular level of force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). Of these three factors, the second is the most important *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). The Court may also consider "the availability of alternative methods of capturing or subduing a suspect" as well as what officers knew about the suspect's health and mental condition. *Smith*, 394 F.3d at 701; *Deorle*, 272 F.3d at 1282-83; *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994). In considering these factors, the Court may not rely on hindsight, and instead must judge the officer's conduct from the "perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. In doing so, the Court must consider that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 397.

If the Court were to draw all reasonable inferences in favor of defendants, they would be entitled to summary judgment. Mr. Rodolf had just led the officers on a dangerous, high-speed chase, appeared to be under the influence of drugs, and had tried to drive away instead of following commands to exit the vehicle and put his hands where they could be seen. Thus, Mr. Rodolf posed an immediate risk to the officers' safety (he could have run over one of the officers and might have been reaching for a gun) and was actively resisting arrest. Under such circumstances, it would have been eminently reasonable for Deputy Kieland to strike Mr. Rodolf

in the face to remove him from the car.

Defendants have failed, however, to address the material differences between their account and Mr. Rodolf's. Defendants suggest that Deputy Kieland either struck Mr. Rodolf only once or only while he was actively resisting arrest and the officers were endangered. For example, Deputy Kieland states: "I punched Rodolf in the face with my left hand to gain control of him. This tactic worked. He appeared to be momentarily stunned and we were able to pull him out of the car." (Kieland Decl. ¶ 8.) Similarly, Sergeant Connelly states: "I saw Deputy Kieland swing his arm toward the left side of Rodolf's head . . . . *Immediately* after Deputy Kieland hit Rodolf we were able to gain control of him and pull him out of the car." (Connelly Decl. ¶ 4 (emphasis added).) In contrast, Mr. Rodolf states that he was struck in the face "repeatedly" while he was "stretched in a defenseless non-threatening posture." (Dkt. 15, at 12.) Sergeant Connelly states, "I did not ever strike or punch Rodolf or hold him so he could be hit." (Connelly Decl. ¶ 5.) In contrast, Mr. Rodolf says that both Deputy Micic and Sergeant Connelly restrained him while Deputy Kieland struck him. (Dkt. 15, at 15.)

Defendants have done no more than counter Mr. Rodolf's testimonial account with their own present-day testimonial accounts. According to defendants, Mr. Rodolf posed an immediate threat and was subdued by the bare minimum of physical force. According to Mr. Rodolf, he posed no threat whatsoever and yet two of the officers held him while a third pummeled his face. Although there are reasons to question Mr. Rodolf's memory—he may have been under the influence of drugs at the time—it is not the Court's function at summary judgment to weigh credibility or decide the truth of the matter. *See Anderson*, 477 U.S. at 255. Mr. Rodolf suggests that Deputy Kieland did not cut his hand while breaking the driver's-side window but cut it while

punching him in the face, which explains why Deputy Kieland was examined for having contact with a pathogen in Mr. Rodolf's blood. (Dkt. 15, at 16-17.) Mr. Rodolf alleges that defendants Kieland, Micic, and Connelly never mentioned how Deputy Kieland struck Mr. Rodolf in the face in the incident reports, instead explaining the blows for the first time after the present suit was filed. (Dkt. 44, at 2-3.) Defendants' motion for summary judgment did not include contemporaneous incident reports by the officers and defendants did not respond to this allegation in their reply brief. Defendants did, however, include a Certification for Determination of Probable Cause that was signed by a King County Sheriff's Office Detective three days after the incident in question. (Kieland Decl., Ex. D at 15-17.) In that document, the detective mentions that Deputy Kieland may have cut his hand while breaking open the driver's side window but does not mention at all that Mr. Rodolf was ever struck in the face. (*Id.* at 16.) Although defendants have submitted exhibits that refer to uncontroverted matters, they have submitted no credible evidence, aside from personal accounts, to bolster their own version. For example, defendants submit no photographs or medical records that might substantiate that Mr. Rodolf's facial injuries were the result of a limited use of physical force or a single blow. Rather, defendants move to strike the medical records attached to the *pro se* plaintiff's response—not because they appear to be inauthentic or unreliable but because plaintiff provided the doctors' "unsworn statements" in violation of Federal Rule of Civil Procedure 56(e).[1] (Dkt. 45, at 2.)

---

[1] The Court strikes as moot defendants' request because it was unnecessary to rely upon the truth or authenticity of the medical records in rendering this Report and Recommendation. The Court advises defendants, however, that it is difficult to assess the reliability of their accounts when they decline even to describe the extent of plaintiff's facial injuries. The Court also denies defendants' motion to strike Mr. Rodolf's response as untimely filed. Although it would have been preferable had Mr. Rodolf's response arrived prior to its due date of January 26, 2009, the Court notes that he appears to have placed the response into the prison mail system by that date

01         In sum, defendants' motion for summary judgment has highlighted rather than dispelled the material issues of fact surrounding whether defendants Kieland, Micic, and Connelly used excessive force against Mr. Rodolf. Questions remain about whether Mr. Rodolf was still resisting arrest, how many times he was struck in the face, and whether he was being restrained at the time. Drawing all reasonable inferences in favor of the non-moving party, the Court recommends denying defendants' motion for summary judgment as to defendants Kieland, Micic, and Connelly.

## II.    Qualified Immunity

        Defendants argue nonetheless that they are entitled to qualified immunity from this suit. Qualified immunity protects § 1983 defendants from liability for civil damages so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court set forth a two-prong test to be applied in evaluating claims of qualified immunity: (1) whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In the recent case of *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), the Supreme Court noted that although the application of the *Saucier* two-prong test need not be followed mechanically and in

---

and by the prison mailbox rule it was timely filed. *See Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001) (holding that prison mailbox rule set forth in *Houston v. Lack*, 487 U.S. 266, 270 (1988), applies even where a prisoner's petition is never filed by the court). Because the Court has considered defendants' reply, they have not been prejudiced by the tardy arrival of plaintiff's response.

that precise order, it remained beneficial to examine both inquiries depending on the circumstances involved.

Here both prongs of the *Saucier* inquiry may be answered affirmatively. The first *Saucier* question is whether Deputy Kieland violated plaintiff's constitutional right. Viewed in the light most favorable to Mr. Rodolf, the facts as alleged would show that Deputy Kieland used excessive force in violation of the Fourth Amendment because he beat a person who was entirely passive and being restrained by other officers.

The second *Saucier* question is whether the officers are nonetheless shielded from liability because no reasonable officer would have known that such conduct was unlawful. As mentioned earlier, an officer must limit the use of force to an amount that is objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 396-97; *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (stating force proper only when there is a need for force); *Winterrowd v. Nelson*, 480 F.3d 1181, 1184 (9th Cir. 2007) (same). Although not every "push or shove" should be seen as a violation of the Fourth Amendment, *Saucier*, 533 U.S. at 209; *Graham*, 490 U.S. at 396, viewed in the light most favorable to Mr. Rodolf, he was not merely pushed or shoved, he was pounded in the face by one officer while being held prostrate by two others. A jury may well find that the events in question spanned such a short time period that it was impossible for the officers to distinguish when, if ever, Mr. Rodolf ceased resisting arrest. At the summary judgment level, however, the Court accepts that an officer would know that it was not objectively reasonable to continue to punch in the face a person who was no longer a threat. The Court therefore recommends finding that defendants Kieland, Micic, and Connelly are not entitled to qualified immunity.

### III. Statute of Limitations

Defendants argue that the statute of limitations bars Mr. Rodolf's complaint against all of the defendants save Deputy Kieland because the amended complaint naming them was filed after the statute had run on March 25, 2008. They do not discuss the question of whether the amended complaint might "relate back" to the timely filing date of the original complaint and do not explain how they might have been prejudiced by a lack of notice since the first notice of the action they received was through the amended complaint. The Court recommends rejecting defendants' statute of limitations argument because the amended complaint relates back to the date the action was commenced.

Because Section 1983 does not contain its own statute of limitations, the three-year statute of limitations for an analogous Washington cause of action is applied. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (referring to RCW § 4.16.080(2)). Federal Rule of Civil Procedure 15(c) provides, however, that an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Washington law provides that new parties can be added after the statute of limitations has run. *Stansfield v. Douglas County*, 43 P.3d 498, 501 (Wash. 2002). "This is because 'once the notice and prejudice requirements of the [state analogue to Fed. R. Civ. P. 15(c)] have been met, any amendment does not subvert the policies of the statute of limitations.'" *Id.* (quoting *North Street Ass'n v. City of Olympia*, 635 P.2d 721 (Wash. 1981), *overruled on other grounds by Sidis v. Brodie/Dohrmann, Inc.*, 815 P.2d 781 (Wash. 1991)). However, adding new defendants is not allowed if plaintiff's delay is due to "inexcusable neglect." *Id.* "[I]nexcusable neglect exists when no reason for the initial failure to name the party

appears in the record." *Id.* (quoting *S. Hollywood Hills Citizens Ass'n v. King County*, 677 P.2d 114 (Wash. 1984)).

Mr. Rodolf's amended complaint meets all of Washington's requirements for adding new defendants after the statute of limitations has run. First, because all of the defendants received notice of this civil rights action at exactly the same time, no one has been prejudiced by maintaining a defense on the merits. Although Mr. Rodolf's original complaint (Dkt. 6) did not include defendants Connelly, Micic, Mann, and Martinez in the caption, the Court declined to order service of that complaint and granted Mr. Rodolf leave to amend it (Dkt. 7). The defendants all received notice of this suit for the first time through a June 10, 2008 order dismissing three defendants and directing service. (Dkt. 16.) Second, this means that the defendants all knew or should have known that the action was brought against them. Third, the record shows that Mr. Rodolf's delay in adding four of the five defendants was due not to inexcusable neglect but rather to a mistake about how to properly plead his *pro se* action. The Court is required to read *pro se* pleadings liberally. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) ("[W]e have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."). Although Mr. Rodolf omitted defendants Connelly, Micic, Mann, and Martinez from the original complaint's caption, he referred to them as "defendants subject to supplemental filings" while naming governmental entities not subject to § 1983 liability. (Dkt. 6, at 5, 7.) In his amended complaint, Mr. Rodolf removed the governmental entities and added both proper and improper defendants. (*See* Dkt. 16.) The errors Mr. Rodolf has made thus far have neither been inexcusable nor prejudiced—or even inconvenienced—defendants.

REPORT AND RECOMMENDATION
PAGE -13

The Court recommends that defendants' motion for summary judgment on the statute of limitations issue be denied.

**CONCLUSION**

For the reasons stated, the Court recommends GRANTING defendants' motion for summary judgment (Dkt. 37-3) in favor of defendants Mann and Martinez and DENYING it with respect to defendants Kieland, Connelly, and Micic. A proposed order accompanies this Report and Recommendation.

DATED this 11th day of March, 2009.

Mary Alice Theiler
United States Magistrate Judge